**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Northeast Ohio Public Energy Council,** | ) | **CASE NO. 1:05 CV 2597** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Green Mountain Energy Company,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon plaintiff's Motion for Order Extending Temporary Restraining Order Pending Hearing on Preliminary Injunction (Doc. 4).  Also pending is defendant's Motion for Dissolution of Temporary Restraining Order (Doc. 6).  This case arises out of defendant's alleged breach of an electric supply agreement.  For the reasons that follow, plaintiff's motion is DENIED and defendant's motion is GRANTED.

**FACTS**

Plaintiff, Northeast Ohio Public Energy Council ("NOPEC"), filed this lawsuit against defendant, Green Mountain Energy Company, alleging various breaches of the Amended and

1

Restated Firm All-Requirements Retail Electric Supply Agreement ("Agreement").  NPOEC is a regional council of governments and the Agreement governs the supply of electric power to customers located within these localities.

Pursuant to its terms, defendant may terminate the Agreement upon the happening of certain events.  Specifically, termination is permitted if regulations are enacted that "directly or indirectly, have or are reasonably likely to have a Material Adverse Effect on [defendant]." (Agmt. at Paragraph 4.5(a)(ii)).  "Material Adverse Effect" is defined as follows,

> A material adverse effect on, or a material adverse change in, or a group of such changes in, the business, operations, financial condition, results of operations, prospects, assets or liabilities of [defendant], taken as a whole or with respect specifically to this Agreement and the Aggregation Program, including without limitation, a material adverse effect on the ability of the [defendant] to perform any of its material obligations under this Agreement.

(Agmt. at Paragraph 1.15).

Defendant informed plaintiff via letter dated September 2, 2005, that certain events triggered its right to terminate the Agreement.  Specifically, defendant indicated that the implementation and allocation of "SECA Charges," "MISO Day II Costs" and "First Energy's Rate Certainty Plan" all give rise to defendant's right to terminate the Agreement pursuant to Paragraph 4.5(a)(ii) in that they will result in a Material Adverse Effect.  The letter further provides that, in the event the parties are unable to agree within seven days upon an amendment that would "preserve the economic benefits" contemplated under the Agreement, then the letter serves as a notice of termination.  The letter indicates that any such termination will be effective December 31, 2005.

The Agreement further states that defendant must provide "additional security" upon the happening of certain events.  Pursuant to the Agreement, defendant provided initial financial

security in the amount of $1.5 million.  In the event that defendant defaults under a material term of the Agreement, Paragraph 15.2(b) requires that defendant provide plaintiff with additional financial security in the amount of $600,000.  Alternatively, this additional financial security is required if plaintiff reasonably believes that defendant's financial condition has "materially deteriorated."

Plaintiff alleges that defendant improperly attempted to terminate the Agreement and, therefore, has breached a material term of the contract.  According to plaintiff, the regulations defendant cites as a basis for termination were enacted prior to the date the parties entered into the Agreement.  In addition, plaintiff points out that the Agreement requires a 60-day "good faith" negotiation period before termination can be effected, yet the September 2nd letter contemplates only a seven-day period.  Plaintiff also claims that it has requested certain financial information from defendant and defendant has refused to comply with the request.  In addition, plaintiff claims that, by defendant's own admission, its financial condition has "materially deteriorated."  Plaintiff also points out that defendant has closed its Ohio offices, which is another indication of plaintiff's grim financial picture.  Based on these various breaches, plaintiff claims that it is entitled to additional security pursuant to Paragraph 15.2(b).

Paragraph 15.2(f) also contemplates additional financial security.  This provision requires defendant to use its best efforts to obtain a "Collateral Assignment," *i.e.*, an agreement with a "replacement" or "backup" energy supplier.  In the event defendant fails to obtain a "Collateral Assignment," defendant must deliver additional financial security in the amount of $1 million.  Plaintiff alleges that defendant neither obtained a "Collateral Assignment," nor increased its financial security.

Paragraph 6.7 of the Agreement places restrictions upon defendant with regard to communications between defendant and plaintiff's constituents.  Specifically, the Agreement requires that defendant submit drafts of certain communications to plaintiff for review and approval prior to distribution.  According to plaintiff, defendant issued a press release indicating that it had terminated the Agreement without submitting the communication to defendant for approval.  That communication ultimately appeared on the front page of the business section in the Cleveland Plain Dealer.  Plaintiff claims that defendant's action violates the Agreement.

This case was initially filed in state court.  On November 2, 2005, the state court granted an *ex parte* temporary restraining order in favor of plaintiff.  The order required defendant to deliver to plaintiff certain financial information, as well as $1 million dollars in additional security as required by the Agreement.  In addition, the state court enjoined defendant from issuing public statements.  There is no indication in any of the state court filings that plaintiff made any effort to contact defendant regarding the motion for temporary restraining order prior to its issuance.

Defendant removed this case to this Court.  Plaintiff moves for an order extending the temporary restraining order until such time as this Court is able to conduct a preliminary injunction hearing.  Defendant moves to dissolve the state court's temporary restraining order.  Plaintiff opposes defendant's motion.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions.

"When considering a motion for a preliminary injunction, the district court should

consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998). *See also Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999); *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997); *J.L. Spoons, Inc. v. O'Connor*, 190 F.R.D. 433, 437-438 (N.D. Ohio 1999); *Crews v. Radio 1330, Inc.*, 435 F.Supp. 1002, 1005 (N.D. Ohio 1977).

A district court must make specific findings concerning each of these factors, unless analysis of fewer facts is dispositive of the issue. *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). However, not all the factors need be fully established for a temporary restraining order or injunction to be proper. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). None is a prerequisite to relief; rather, they should be balanced. *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

**DISCUSSION**

Defendant argues that the temporary restraining order issued by the state court should be dissolved. According to defendant, the order was issued in violation of Ohio Rule of Civil Procedure 65(A)(2). That rule, which mirrors the federal rule, prohibits the issuance of a temporary restraining order absent notification to the adverse party unless

> the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

In this case, defendant claims that no such certification was made. Defendant argues that

plaintiff knew the identity of counsel for defendant, yet intentionally failed to notify it of the motion for temporary restraining order.  Moreover, defendant claims that various high ranking individuals from within its organization were in Cleveland meeting with plaintiff's representatives on the day the temporary restraining order issued.  Plaintiff, however, failed to provide defendant with notification of its intent to file the motion and, instead, served defendant with the order after it issued.

Plaintiff does not dispute that the *ex parte* temporary restraining order does not comply with Oh. R. Civ. Pro. 65(A)(2).  Rather, plaintiff argues that in the absence of prejudice, failure to comply with the rule is harmless error.

Upon review, the Court agrees with defendant.  An *ex parte* temporary restraining order is to issue only in the rarest of circumstances, none of which is present in this case.  As defendant notes, the Sixth Circuit has held that a district court abuses its discretion by failing to comply with the notice requirements set forth in the Federal Rules.  *See, First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 652 (6th Cir. 1993).[1]  As defendant points out, these parties had been in contact with each other for the weeks preceding the issuance of the order.  The record contains no written indication that plaintiff complied with its obligation under Ohio Rule

---

[1] Plaintiff relies on an Ohio court of appeals case from 1971 in support of its position that its failure is excusable absent a showing of prejudice.  While the case appears to stand for the proposition argued by plaintiff, this conclusion is in direct conflict with Sixth Circuit law.  In that this case was removed to federal court, this Court is bound to apply Sixth Circuit law.  Even if this Court were initially bound to apply Ohio law, there is no doubt that federal law applies to plaintiff's motion to extend the temporary restraining order.  This Court finds that it would be error to extend the order issued by the state court due to the lack of notice.

65(A)(2) and plaintiff does not claim it made any effort to contact defendant concerning the motion.  Nor does plaintiff argue that any circumstance existed warranting the issuance of an *ex parte* order.  The Court presumes by plaintiff's silence that the failure to attempt to contact defendant was intentional.  Such gamesmanship is frowned upon by the Court and is the precise conduct the rule is designed to prevent.  For this reason alone, defendant is entitled to a dissolution of the temporary restraining order issued in state court.[2]

**CONCLUSION**

For the foregoing reasons, the Court finds that defendant's Motion for Dissolution of Temporary Restraining Order is GRANTED.  In that the state court improperly issued the temporary restraining order, plaintiff's Motion for Order Extending Temporary Restraining Order Pending Hearing on Preliminary Injunction is DENIED.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Dated: 11/17/05                               United States District Judge

---

[2] Having concluded that plaintiff failed to comply with the certification and notice requirements, the Court need not reach defendant's remaining arguments.  The Court notes, however, that it has grave doubts as to whether plaintiff could satisfy the irreparable harm element required for either a temporary restraining order or preliminary injunction.  Moreover, as defendant notes, there are serious issues as to whether plaintiff's constituents have standing to claim irreparable harm.